UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABDUL KAREEM AL-SHIMARY,

    *Plaintiff,*

v.

O.T. WINN, G. MINIARD,
MDOC, LOPEZ, and
THOMAS,[1]

    *Defendants.*

CASE NO. 2:21-cv-10403

HON. SEAN F. COX
DISTRICT JUDGE
HON. PATRICIA T. MORRIS
MAGISTRATE JUDGE

_____/

# REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 26)

### I.   RECOMMENDATION

For the following reasons, **I RECOMMEND** that this Court **GRANT** Defendants Winn, Gary Miniard, Michigan Department of Corrections ("MDOC"), and Thomas' motion for summary judgment on the basis of exhaustion, dismissing all claims against them **WITHOUT PREJUDICE**.  (ECF No. 26).

### II.   REPORT

####   A.   Procedural and Factual Background

On January 22, 2021, Plaintiff Abdul Kareem Al-Shirmary, a Michigan Department of Corrections ("MDOC") inmate housed at the Saginaw Correctional Facility ("SRF") in Freeland Michigan, filed suit in this Court under 42 U.S.C. § 1983, alleging violations of

---

[1] The Court recognizes that "Thomas, Officer" is actually Freddel Thomas as indicated in the present motion.

the Eighth Amendment resulting from Defendants Winn, Miniard, and MDOC's failure to protect him and other prisoners from COVID-19.[2] (ECF No. 1). Plaintiff alleges that Defendants' failure to use preventative measures recommended by the Center for Disease Control ("CDC") or the Department of Health and Human Services placed him in "imminent danger." (*Id*. at PageID.3). He states that due to inadequate medical care for inmates contracting COVID-19, he is experiencing "mental stress, anxiety, headaches, body aches, depression, mood swings, [and] fear of death . . ." (*Id*. at PageID.5). He appears to state that after he received a positive test and was given treatment, he was improperly exposed to another prisoner who had tested positive for the virus more recently. (*Id*. at PageID.9). He alleges that Defendant Winn, SRF's warden at the time of the events, failed to provide the staff with personal protection equipment to slow the spread of the virus. (*Id*. at PageID.4). He alleges that Defendant Miniard, SRF's interim warden moved prisoners testing negative for the virus with those testing positive. (*Id*. at PageID.5). On April 4, 2021, Plaintiff submitted an "Affidavit of Truth" alleging that Defendants Lopez and Thomas brought him his legal mail from this Court already opened. (ECF No. 7, PageID.18). On July 23, 2021, the District Court allowed Plaintiff to supplement the Complaint to include the claims against Lopez and Thomas. (ECF No. 9, PageID.33, 35).

Plaintiff seeks monetary damages and "compassionate release, home confinement, [and/or] early parole . . ." (ECF No. 1, PageID.6).

    **B.**    **Summary Judgment Standard**

---

[2] While the Complaint received by the Court on January 30, 2021, Plaintiff signed it on January 22, 2021.

A court will grant a party's motion for summary judgment when the movant shows that "no genuine dispute as to any material fact" exists. Fed. R. Civ. P. 56(a). In reviewing the motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper when the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot merely rest on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that

the other side's evidence lacks credibility. *Id.* at 493. And while a pro se party's arguments are entitled to liberal construction, "this liberal standard does not ... 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D.N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### C. Exhaustion Under the PLRA

Under the Prison Litigation Reform Act ("PLRA") of 1996, specifically 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under § 1983 ...

4

by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, "exhaustion" under the PLRA means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 92 (2006). In *Woodford*, the Supreme Court defined "proper exhaustion" as requiring "compliance with an agency's deadlines and other critical procedural rules...." *Woodford*, 548 U.S. at 90.

MDOC Policy Directive ("P.D.") 03.02.130, effective March 18, 2019, prescribes the three-step administrative exhaustion process for grievable matters. At Step I, a prisoner must "attempt to resolve the issue with the staff member involved within two business days" and, if unsuccessful, must file a grievance within five business days. *Id.* at ¶ Q. If the inmate is dissatisfied with the disposition of the grievance, or does not receive a response ten days after the due date, he or she may file a Step II grievance using the appropriate form. *Id.* at ¶ DD. Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response for ten days after the response was due, he or she may file a Step III grievance. *Id.* at ¶ HH.

To be properly exhausted, a defendant must be named at Step I. P.D. 03.02.130, ¶ S provides:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included.

5

(underscore in original).

### 1. Defendants Winn, Miniard, and MDOC

Defendants argue first that Plaintiff failed to exhaust any of the claims regarding housing conditions against Winn, Miniard, or MDOC. (ECF No. 26, PageID.93).

In Step I of Grievance Identifier SRF 2020-05-0306-27z ("SRF-306"), Plaintiff states that he kited his Assistant Resident Unit Supervisor ("ARUS") because his unit was not being disinfected regularly. (*Id*. at PageID.137). He states further that he and the other SRF inmates were not given "proper protection" from contracting COVID-19; cleaning supplies were "very watered down"; and it was impossible for him to social distance in his cell or the chow hall. (*Id*.). He states that the "inhumane treatment and living conditions" violate P.D. 03.03.130 and his rights under the Eighth Amendment. (*Id*.). He asks for temporary home confinement. (*Id*.).

Defendants argue that Plaintiff "*did not* exhaust any claims against Winn, Miniard, or MDOC relating to the allegedly deficient housing conditions through either the MDOC grievance process or the Warden's Forum process." (*Id*. at PageID.93) (emphasis in original). Defendants contend that SRF-306 was rejected at Step I because the grievance did not allege a specific violation of policy or that a policy was improperly applied to himself. (*Id*.). They add that Plaintiff failed to comply with the Step I grievance response directing him to raise the claim through the Warden's Forum process. (*Id*. at PageID.93-94) citing (*id*. at PageID.139). Defendants contend additionally that SRF-306 cannot be read to include Defendant Miniard because he was not the warden of SRF at the time the Step I grievance was filed. (*Id*.).

6

In response, Plaintiff cites P.D. 03.02.130 which states that "Grievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement that personally affect the grievant . . ." (ECF No. 28, PageID.168).  He argues that the recommendation to raise his complaints of unsanitary conditions at the Warden's Forum was "simply an attempt to sabotage a potential meritorious lawsuit." (*Id*.).

### a. Warden's Forum

In *Moses v. Campbell*, No. 20-CV-13366, 2022 WL 2805145, at *7 (E.D. Mich. July 18, 2022), the Court explained that where a prisoner's complaint concerns the application or misapplication of a policy that results in a violation of his or her personal rights, he or she must proceed through the three-step grievance procedure.  *Id.*; P.D. 03.02.130 ¶ F.  A complaint that concerns the general content of a policy that affects the entire prison (or unit) population is non-grievable and must be directed to the Warden's Forum.  A grievance will be rejected if "[t]he prisoner is grieving content of the policy or procedure except as it was specifically applied to the grievant." P.D. 03.02.130 ¶ J(8).  "If a prisoner has a concern with the content of a policy or procedure, s/he may direct comments to the Warden's Forum as provided in PD 04.01.105 'Prisoner Housing Unit Representatives/Warden's Forum.'"  "Thus, MDOC P.D. 03.02.130 'mirrors the requirement in section 1983 that a plaintiff's personal rights be violated and not the rights of someone else.'" *Moses,* at *7 (citing *Hudson v. Caruso*, No. 1:10-cv-58, 2011 WL 1042296, at *7 (W.D. Mich. Jan. 24, 2011)) (citations omitted), *report and recommendation adopted*, 2011 WL 1042286 (W.D. Mich. Mar. 18, 2011).

7

In *Berryman v. Haas*, No. 19-1484, 2020 WL 6325553, at *2 (6th Cir. May 11, 2020), the Sixth Circuit observed that while the Warden's Forum is the correct venue to assert a general challenge to a prison policy or procedure, the exhaustion process in P.D. 03.02.130 must be followed if the policy is "not the focus of [a plaintiff's] suit." *See also Lopp v. Washington*, No. 1:19-CV-540, 2021 WL 3033266, at *1(W.D. Mich. July 19, 2021) ("The Warden's Forum may be a venue to properly exhaust claims that challenge a prison policy or procedure as a whole, but the Warden's Forum is not an appropriate place to argue that a specific prisoner's constitutional rights were violated.").

In the present case, while Plaintiff complained about the misapplication of policies concerning protections against COVID, the "focus" of his complaint was how the misapplication infringed on his personal constitutional rights. In his complaint, he alleges that because of constitutionally inadequate preventative medical care, he "is suffering from mental stress, anxiety, headaches, body aches, depression, mood swings, fear of death by the defendant's mishandling and failure to follow the CDC's recommendations." (ECF No. 1, PageID.5). He also refers to his uncertainty of long-term medical issues if he contacts the virus a second time. (*Id.*). In an affidavit appended to his complaint, Plaintiff states:

> After testing positive they moved another prisoner who had recently tested positive after almost three weeks of me testing positive. I only received medical treatment the first time I was notified of being COVID 19 positive.

(*Id*. at PageID.9).

In his grievance, Plaintiff states that he himself does not have proper cleaning supplies and that he is unable to distance himself from other inmates, including his cell-

mate. He also states that he is being denied his Eighth Amendment rights. (ECF No. 26-3, PageID.138).

In *Lopp*, the defendant argued that the plaintiff was required to present his claims to the Warden's Forum in order to exhaust. Rejecting that argument, the Court held:

> [Plaintiff] argues that his constitutional rights were violated, and he seeks damages for these violations. [Plaintiff] does not challenge a prison policy or procedure, nor does he ask the Court to invalidate any prison policy or procedure. Thus, the Warden's Forum was not the proper venue to present his claims; the grievance process was.

*Id.*, at *2.

Likewise in the present case, Plaintiff is asserting a violation of his own constitutional rights, stating that "the claims asserted are violations under the Eighth Amendment, where the defendants failed to adequately protect the Plaintiff from physical and mental conditions under state law." (ECF No. 1, PageID.6). He seeks compensatory damages, punitive damages, and injunctive relief. (*Id.*). To be sure, the grievance contains criticisms of the SRF's policies and procedures and how they affected the entire prison population. However, Plaintiff has adequately set forth a description of how his individual rights were violated as well. The Defendants' argument that Plaintiff was required to proceed through the Warden's Forum must therefore be rejected.

### b. Failure to Name Defendants at Step I

Because Plaintiff did not comply with the Policy Directive requirement that a defendant be named at Step I, he has not properly exhausted. P.D. 03.02.130, ¶ S. *See Reed–Bey v. Pramstaller*, 603 F.3d 322, 324–25 (6th Cir. 2010) ("Requiring inmates to

9

exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation in the process."); *see also Alexander v. Jackson*, 440 F. Supp. 2d 682, 685 (E.D. Mich. 2006) ("To satisfy the exhaustion requirement, an administrative grievance must be factually specific as to both the person and the acts complained of. If a particular defendant has not been specifically named in a grievance, the claim as to that defendant has not been exhausted.") (citing *Curry v. Scott*, 249 F.3d 493 (6th Cir. 2001)). Therefore, dismissal of the claims against these Defendants without prejudice is appropriate. *See Bell v. Konteh*, 450 F.3d 651, 653 (6th Cir. 2006) ("[T]he appropriate disposition of an unexhausted claim under the PLRA is dismissal without prejudice.").

### 2. Defendant Thomas

Plaintiff filed his complaint on January 30, 2021, and his "Affidavit of Truth," construed by the Court as a supplement to the complaint, on April 6, 2021. In this supplement, Plaintiff added Defendants Thomas and Lopez.[3]

Plaintiff dated his Step I grievance against Defendant Thomas, concerning his legal mail, on April 5, 2021, and it was received at Step I on April 12, 2021. (ECF No. 26-3, PageID.126). It was denied at Step I on April 14, 2021. (*Id*. at PageID.127). It was denied

---

[3] Defendant Lopez has not been served.

at Step II on May 10, 2021 (*Id*. at PageID.125) and denied at Step III on August 23, 2021. (*Id*. at PageID.124).

It is clear therefore that Plaintiff completed the administrative exhaustion of his claim against Defendant Thomas only after he had filed both his original complaint and his supplement to the complaint.

In *Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017), the Sixth Circuit held that "the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted claim." But at the time that Plaintiff filed his supplemental complaint on April 6, 2021, he had not yet exhausted his administrative remedies as to Defendant Thomas. The PLRA requires exhaustion of all available administrative remedies *before* filing suit. 42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Therefore, the claims against Thomas must be dismissed under both the PLRA and *Mattox*.

Further, even if Plaintiff had exhausted his claims against Thomas on April 6, 2021, *Mattox* would preclude amending to add him because, as discussed in the preceding section, Defendants Winn, Miniard, and MDOC were not exhausted, and there

11

were no other "fully exhausted claims" against any Defendant in the original complaint filed on January 30, 2021.[4]

### E.     Conclusion

For these reasons, **I RECOMMEND** that this Court **GRANT** Defendants' motion for summary judgment on the basis of exhaustion, dismissing claims against them **WITHOUT PREJUDICE**.  (ECF No. 26).

### III.    REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

---

[4] Even if Plaintiff's Affidavit of Truth (construed as a supplemental complaint) (ECF No. 7) related back to or were considered part of the original complaint, the only other Defendant named in the supplemental was Lopez.  Plaintiff alleges that Lopez improperly opened his legal mail on April 2, 2021, four days before Plaintiff filed the Affidavit of Truth. (*Id*. at PageID.18). Lopez could not have exhausted all three steps of the administrative procedure in four days, and thus the claims against him could not be considered "fully exhausted."

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 28, 2022           S/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge